[L.A. No. 30014. In Bank. Mar. 13, 1973.]

SAUL H. KASSAN et al., Plaintiffs and Appellants, v.
CHALMERS O. STOUT et al., Defendants and Respondents.

**COUNSEL**

Lawson M. Brown for Plaintiffs and Appellants.

Horam W. Kwan and Earl R. Steen for Defendants and Respondents.

**OPINION**

**McCOMB, J.**—Plaintiffs appeal from a judgment in favor of defendants in a forcible entry and detainer action.

*Facts:* In 1965, plaintiffs leased a building from defendants for a three-year period. The lease agreement provided that "[l]essee shall not assign this lease or any interest therein, and shall not subject the demised premises or any portion thereof, or any right or privilege appurtenant thereto, or suffer any other person . . . to occupy or use the demised premises or any portion thereof, without the prior consent of Lessor . . . . Any such assignment, subletting, occupancy or use without Lessor's prior written consent shall be void, and at Lessor's option, shall terminate this lease . . . ." Plaintiffs moved onto the premises and commenced to operate a laundry there.

Less than two years later, plaintiffs entered into negotiations with William Fetman to sell him their laundry business, including their leasehold interest. Fetman moved onto the premises and began to operate the laundry. He submitted a check to defendants in payment of the rent due, but they refused it. They refused the check again when plaintiffs submitted it.

About two weeks after Fetman moved onto the premises, defendants' attorney nailed a notice on the door of the premises, which notice enumerated various claimed breaches of the lease agreement and concluded: "Each of the foregoing are considered material breaches of the above mentioned lease in question and the landlord herewith exercises his right to the possession of the premises without terminating the lease and shall relet the demised premises as agent of [plaintiffs]." Immediately after posting this notice, defendants' attorney entered the building and evicted the occupants, Fetman and his employees. Defendants subsequently relet the premises to Edwin Samn, who operated a similar business in an adjacent building leased to him by defendants.

Plaintiffs sued for forcible entry and detainer. The trial court found for defendants, because it believed that plaintiffs' preparations to sell their leasehold interest to Fetman were inconsistent with the lease terms and consequently amounted to a surrender by plaintiffs.

Question: *Should the trial court's findings that plaintiffs abandoned the premises and that defendants elected to treat said abandonment as a surrender and thereby brought plaintiffs' tenancy to an end be sustained under the facts of this case?*

*No.* Even if there had been an abandonment by plaintiffs (which, as will be hereinafter discussed, there was not), the uncontradicted evidence shows that defendants did not accept surrender of the property. ■ An attempted abandonment terminates the lessee's rights and liabilities only if the lessor accepts the surrender of the property. (*Welcome* v. *Hess,* 90 Cal. 507, 513 [27 P. 369].) Here, however, the notice which defendants' attorney posted on the door of the premises immediately before evicting the occupants shows conclusively that they did not accept the claimed abandonment. ■ Rather, they expressly disavowed any intention to terminate the lease and gave notice that they would relet the premises on plaintiffs' account. Such a determination to hold the lessee liable under the lease agreement is totally inconsistent with the acceptance of surrender.

Thus, in *B.K.K. Co.* v. *Schultz,* 7 Cal.App.3d 786 [86 Cal.Rptr. 760], it was found that there had been no abandonment even though the lessor took possession of the property, made repairs, and sought to relet the

premises, because his attorney had sent the lessee a letter informing him that the lessor intended to hold him liable under the lease.

More basically, there was no evidence to support a finding of an attempted abandonment by plaintiffs. ■ An abandonment takes place when "the lessee leaves the premises vacant with the avowed intention not to be bound by his lease." (30 Cal.Jur.2d, Landlord and Tenant, § 270, p. 411.) In *Martin* v. *Cassidy,* 149 Cal.App.2d 106, 110 [3] [307 P.2d 981], it is stated: "Abandonment is defined as the 'voluntary giving up of a thing by the owner because he no longer desires to possess it or to assert any right or dominion over it and is entirely indifferent as to what may become of it or as to who may thereafter possess it.'" In the present case, plaintiffs did not leave the premises vacant, but turned them over to Fetman; they never claimed they were not bound by the lease; and they clearly were not indifferent as to who might thereafter possess the premises. Under the circumstances, there was no abandonment.

Plaintiffs' negotiations to sell their leasehold interest cannot support a finding of abandonment. ■ In the absence of a contractual provision to the contrary, a lessee may assign his leasehold interest. (*Everly Enterprises, Inc.* v. *Altman,* 54 Cal.2d 761, 766 [8 Cal.Rptr. 455, 356 P.2d 199].) ■ Such an assignment is not an abandonment of the lessee's interest; on the contrary, it is an affirmation of his desire to retain, and dispose of, that interest. As a result, even though abandonment is a question of fact for the trial court (*Martin* v. *Cassidy, supra,* 149 Cal.App.2d 106, 110), the evidence offered with respect to plaintiffs' dealings with Fetman cannot sustain the trial court's finding.

In *Martin,* the trial court's finding of abandonment was upheld, because the lessor testified the lessee had said that he was abandoning, the lessee did not tender any further rent payments, and the lessee left the premises vacant. The circumstances in the present case are entirely different. There is no contention that plaintiffs said they were abandoning, both they and Fetman offered Fetman's check for the rent due, and the premises were continuously occupied.

It is true, as concluded by the trial court, that plaintiffs' acts constituted a breach of the lease; but allowing a finding of abandonment to be premised on the doing of acts in violation of the lease agreement would effectively undermine this court's holding in *Jordan* v. *Talbot,* 55 Cal.2d 597 [12 Cal.Rptr. 488, 361 P.2d 20, 6 A.L.R.3d 161]. ■■ As pointed out in *Jordan,* the lessor's remedy for breach of a leasehold agreement is the three-day eviction notice permitted by section 1161 of the Code of Civil Procedure, and "a provision in the lease expressly permitting a forc-

ible entry would be void as contrary to the public policy set forth in section 1159 [of the Code of Civil Procedure]." (Pp. 604-605 [9a].)

Section 1161, subdivision 3, of the Code of Civil Procedure provides that a tenant is guilty of unlawful detainer if he fails to perform the conditions of the lease after receipt of three days' notice from the landlord requiring such performance. At that time, the landlord has a right to assistance from the courts in regaining possession of his property. Defendants, however, gave no such notice and did not seek assistance from the courts.

 Section 1161 of the Code of Civil Procedure was enacted to obviate the need for self-help by landlords and thereby to avoid breaches of the peace. Thus, we said in *Jordan* at pages 604-605 [8, 10]: "Under section 1161 of the Code of Civil Procedure a lessor may summarily obtain possession of his real property within three days. This remedy is a complete answer to any claim that self-help is necessary.

 ". . . . Regardless of who has the right to possession, orderly procedure and preservation of the peace require that the actual possession shall not be disturbed except by legal process." (See also *Lamey* v. *Masciotra,* 273 Cal.App.2d 709, 714-715 [8, 9] [78 Cal.Rptr. 344].)

 A landlord is permitted to reenter without satisfying the requirements of section 1161 of the Code of Civil Procedure only when the tenant has abandoned the premises and thereby lost his right to possession. As hereinabove pointed out, however, plaintiffs had not abandoned the premises.

The judgment is reversed.

Wright, C. J., Tobriner, J., Mosk, J., Burke, J., Sullivan, J., and Files, J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.